IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, and JAMES S. JORGENSEN, Administrator of the Funds, <br><br> Plaintiffs, <br> v. <br> LONNIE DANTZLER, individually and d/b/a D and B CONSTRUCTION, and DONNA BALL, individually and d/b/a D and B CONSTRUCTION, and DEE AND BEE CONSTRUCTION, INC. an Illinois corporation, <br><br> Defendants. | Case No. 11-cv-6937 <br><br> Judge THARP |

## SETTLEMENT AGREEMENT AND STIPULATION TO DISMISS

Now come Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund for the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and James S. Jorgensen, Administrator of the Funds ("Funds"), by and through their attorney, Jerrod Olszewski, and Defendants, Lonnie Dantzler, individually and d/b/a D and B Construction, and Dee and Bee Construction, Inc. (hereinafter "Defendants"), by and through their attorney, William E. Jamison, Jr., and hereby enter into the following Settlement Agreement and Stipulation to Dismiss.

1.  The parties have settled this matter with Defendants agreeing to pay Funds the sum of $90,740.85 pursuant to an Installment Note, Guaranty of Payment and Indemnification, and Commercial Security Agreement attached hereto as Exhibits A, B, and C respectively and incorporated herein.

1

2

2. In exchange for the foregoing settlement, Funds release Company from all liability, except withdrawal liability, arising out of the audit for the time period of January 1, 2009 through December 31, 2010, including liquidated damages, interest, audit costs, and Funds' attorneys fees and costs incurred in their collection efforts related to the foregoing amounts.

3. The parties further agree and request this Court to dismiss this matter without prejudice with this Court retaining jurisdiction to enforce the terms of the Settlement Agreement through July 24, 2014. Absent a timely motion, said dismissal will be with prejudice on July 25, 2014.

                                                                                            Respectfully submitted,

Dated: June 18, 2012                          Plaintiffs Laborers' Pension Fund, et al.
                                                                                    By: /s/ Jerrod Olszewski
                                                                                              Jerrod Olszewski

Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL 60604
(312) 692-1540

Dated: June 18, 2012                          Defendant Lonnie Dantzler individually and d/b/a D
                                                                                     and B Construction, and Defendant Dee and Bee
                                                                                              Construction, Inc.

                                                                                              By: /s/ William E. Jamison, Jr.
                                                                                                 William E. Jamison, Jr.

William E. Jamison, Jr. & Associates
815 W. Van Buren St., Suite 321
Chicago, IL 60607
(312) 226-8500

2

# INSTALLMENT NOTE

This Installment Note ("Note") is made between the Laborers' Pension Fund ("Pension Fund") and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity ("Health and Welfare Fund" or collectively the "Funds"), the parties of the first part, and <u>Lonnie Dantzler, individually and d/b/a D and B Construction,</u> ("D and B 1") <u>and Dee and Bee Construction, Inc.</u> ("D and B 2"), the party of the second part.

WHEREAS, D and B 1 has at all relevant times been party to a collective bargaining agreement ("CBA") with Local <u>5</u> the Construction and General Laborers' District Council of Chicago and Vicinity, whereunder it is obligated to make certain contributions to the above-named Funds, as well as to the Training Fund, on behalf of its covered employees, and to submit payment of all employee union dues:

WHEREAS, the D and B 1 has failed to timely pay certain contributions owed to the Funds for the audit period of <u>January 1, 2009 through December 31, 2010.</u>

WHEREAS, D and B 1 has failed to remit all employee union dues to the Funds, as the designated collection agent for the Construction and General Laborers' District Council of Chicago and Vicinity, for the audit period of <u>January 1, 2009 through December 31, 2010.</u>

WHEREAS, D and B 1 and D and B 2 desire to pay all delinquencies owed to the Funds as alleged in the Complaint in Case No. 11 C 6937 pending in the Northern District of Illinois, Eastern Division, to pay all union dues owed to the Construction and General Laborers' District Council of Chicago and Vicinity, together with liquidated damages, and interest, as set forth below and further desire to remain current in its obligation to pay contributions to the Funds.

THE PARTIES HEREBY AGREE as follows:

1. D and B 1 and D and B 2 will pay $<u>41,483.76</u> to the Health and Welfare Fund (comprised of $<u>23,857.69</u> in delinquent contributions, $<u>7,698.44</u> in liquidated damages, $<u>3,135.00</u> in attorneys fees and costs, $<u>743.75</u> in audit costs and $<u>6,048.88</u> in interest) (based on an interest rate of 12%). D and B 1 and D and B 2 will also pay $<u>35,504.20</u> to the Pension Fund (comprised of $<u>20,053.60</u> in delinquent contributions, $<u>6,220.66</u> in liquidated damages, $<u>3,135.00</u> in attorneys fees and costs, $<u>743.75</u> in audit costs and $<u>5,351.19</u> in interest). All of these amounts shall be paid according to the schedule described below in paragraphs 5 and 6.

2. D and B 1 and D and B 2 will also pay $<u>1,324.60</u> to the Training Fund (comprised of $<u>1,017.20</u> in delinquent contributions, $<u>203.44</u> in liquidated damages and $<u>103.96</u> in interest), $<u>611.72</u> to the CCA Fund (comprised of $<u>540.48</u> in delinquent contributions, $<u>54.05</u> in liquidated damages and $<u>17.19</u> in interest), $<u>682.05</u> to the LECET Fund (comprised of $<u>602.14</u> in delinquent contributions, $<u>60.21</u> in liquidated damages and $<u>19.70</u> in interest), $<u>1,048.99</u> to the LDCMC Fund (comprised of $<u>926.50</u> in delinquent contributions, $<u>92.65</u> in liquidated damages and $<u>29.84</u> in interest) and $<u>10,085.53</u> in union dues (comprised of $<u>9,117.29</u> in delinquent contributions and $<u>968.24</u> in liquidated damages). These delinquent amounts shall be paid in their entirety at the time payment under this Note commences, in accordance with the schedule described in paragraph 6.

3. D and B 1 and D and B 2 will also pay the Funds or the sum of $<u>6,270.00</u> representing attorney fees and costs incurred by the Funds in Case No.<u>11 C 6937</u>. This amount is split equally between Welfare and Pension as described in paragraph 1 above.

4. D and B 1 and D and B 2 will also pay the Funds the sum of $<u>1,487.50</u> in audit costs. This amount split equally between Welfare and Pension as described in paragraph 1 above.

5. Simultaneously with the execution of this Note, D and B 1 and D and B 2 will pay a down payment, excluding note interest and the delinquent amounts described above in paragraph 2, or $<u>3,562.08</u> to the Health and Welfare Fund and $<u>2,277.40</u> to the Pension Fund.

6. For twenty-four (24) consecutive months commencing on <u>August 1, 2012</u> and ending on <u>July 1, 2014,</u> D and B 1 and D and B 2 will pay $<u>1,580.07</u> per month to the Health and Welfare Fund and $<u>1,384.45</u> per month to the Pension Fund.

7. D and B 1 and D and B 2 will remit all payments to the Funds' Administrative Offices, which are located at 11465 Cermak Road, Westchester, Illinois 60154.

8. Payments made pursuant to this Installment Note shall be considered "contributions" as defined under the terms of the CBA and the Fund's respective Agreements and Declarations of Trust. If the contributions are not paid by the 10th day following the date on which payment should have been received, the contribution shall be considered delinquent and all charges which apply to the late payment of contributions under the terms of the CBA and the Fund's respective agreements and Declarations of Trust shall apply, including, but not limited to, the assessment of interest and liquidated damages. Further, in the event D and B 1 and D and B 2 fail to timely make any payments



described in this Note. All amounts described in paragraph 1 herein shall immediately become due on the 10th day following the date on which payment should have been received by the Fund's under the terms of this Note. In such event D and B 1 and D and B 2 further agree to pay all attorney fees and costs incurred by the Funds in any action to enforce any part or all of this Note.

9. This Installment Note is conditioned on D and B 1 and D and B 2 staying current on their obligations to the Funds under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust. In the event that D and B 1 and D and B 2 fail to maintain their obligations under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, including, but no limited to, its obligations to submit timely contribution reports and to make timely contribution payments by the tenth day following the month in which laborers' work was performed, then the Funds shall have the right to accelerate and collect all amounts due under this Installment Note, plus payment of all attorneys' fees and costs incurred by the Funds in any action to accelerate this Installment Note.

10. D and B 1 and D and B 2 shall have the right to prepay the entire amount due under the Note prior to the date upon which payment is due without penalty and without payment of any precalculated Note interest that has not accrued as of the date full payment has been made.

The Parties hereby agree to these terms by their execution hereof on the 13th day of the July, 2012.

Lonnie Dantzler, individually and d/b/a D and B Construction

By: _____

Title: PRESIDENT

Dee and Bee Construction, Inc.

By: _____

Title: TREASURER

Laborers' Pension Fund

By: _____

Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity.

By: _____

## GUARANTY OF PAYMENT AND INDEMNIFICATION

This Guaranty ("Guaranty") is made as of ___July 13, 2012___ by the undersigned, Lonnie Dantzler, (the "Guarantor"), to and for the benefit of the **LABORERS' PENSION FUND AND THE LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY** (the "District Council") and any related ancillary Funds to which D and B Construction is obligated to pay contributions to by virtue of its Agreement with the District Council and the Funds' respective Agreements and Declarations of Trust (collectively the "Funds").

WHEREAS, D and B Construction and Dee and Bee Construction, Inc. (the "Companies") have agreed to pay a total of **$90,740.85** to the Funds in settlement of the alleged delinquent contributions owed to the Funds and to be paid under the terms of a Settlement Agreement and Installment Note ("Note").

WHEREAS, the Funds are unwilling to enter into the Note unless the Guarantor executes this Guaranty; and

WHEREAS, the Guarantor has a financial interest in the Company and will be benefited by the Note:

NOW THEREFOREWHEREAS, in consideration of the foregoing, the Guarantor agrees as follows:

1. _Guaranty of Payment and Indemnification._ The undersigned guarantees, absolutely and unconditionally: (a) the payment when due of the entire principal indebtedness and all interest evidenced by the Note during the twenty-four (24) month payment period including interest and liquidated damages for late or unpaid payments due on the Note; and (b) the full and complete payment of any and all fees and costs incurred pursuant to default under terms of the Note, whether litigation is involved or not, and if involved, whether at the trial or appellate levels or in pre- or post-judgment bankruptcy proceedings in enforcing or realizing upon the obligations of the Guarantor hereunder (the obligations of Guarantor under this Paragraph 1 are collectively hereinafter referred to as the "Obligations"). The Guarantor also agrees to be personally liable for all monthly benefit contributions, union dues and/or wages owed from the Company to the Funds, the District Council, all ancillary funds, and/or the participants that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs.

2. _Continuing Guaranty_. This Guaranty shall be a continuing Guaranty, and shall not be discharged, impaired or affected by; (a) the existence or continuance of any obligation on the part of the Company with respect to the Note; (b) any forbearance or extension of the time of payment of the Note; (c) the validity or invalidity of the Note; (d) any defenses whatsoever that the Company or any of the party thereto may have to the performance or observance of any term, covenant or condition contained in the Note; (e) the existence or non-existence of the Company as a legal entity; (f) any limitation or exculpation of (other than the payment and performance in full of all of the Company's Obligations) that Guarantor may have as to his undertakings, liabilities and obligations hereunder, including any defenses based upon any legal disability of the Company or any discharge or limitation of the disability of the Company, whether consensual or arising by operation of law or any bankruptcy, insolvency or debtor-relief proceeding, or from any other cause, each and every such defense being hereby waived by the Guarantor.

3. _Waivers._ Guarantor waives diligence, presentment, protest, notice of dishonor, demand for payment, extension of time of payment, notice of acceptance of this Guaranty, non-payment at maturity and indulgences and notices of every kind not provided for under this Guaranty. It is the intention of this Guaranty that Guarantor shall remain liable as principal, notwithstanding any act, omission or thing that might otherwise operate as a legal or equitable discharge of Guarantor, until all of the Company's obligations shall have been fully paid and performed.

4. _Subrogation._ Notwithstanding anything to the contrary elsewhere contained herein or in the Note, the Guarantor(s) expressly waive with respect to the Company any and all rights at law or in equity to subrogation, to reimbursement, to exoneration, to contribution, to set off or to any other rights that could accrue to a surety against a

1


EXHIBIT B

principal, to the Guarantor against a maker or obligor, to an accommodation party against the party accommodated, or to a holder or transferee against a maker, and which the guarantor may have or hereafter acquire against the Company in connection with or as a result of Guarantor's execution, delivery and/or performance of this Guaranty or the Note. The Guarantor agrees that he or she shall not have or assert any such rights against the Company or its successors and assigns or any other party (including any surety), either directly or as an attempted set off to any action commenced against the Guarantor by the Company (as borrower or in any other capacity) or any other person.

    5. Independent Obligations. The Funds may enforce this Guaranty without first resorting to or without first having recourse to the Note; provided, however, that nothing herein contained shall preclude the Funds from suing on the Note or from exercising any other rights; and the Funds shall note be required to institute or prosecute proceedings to recover any deficiency as a condition of any payment hereunder or enforcement hereof.

    6. Acceleration. In the event that payments due under the Note shall be accelerated, the Guarantor's obligations hereunder shall also be accelerated without further notice from the Funds.

    7. Effect of Bankruptcy. This Guaranty shall continue in full force and effect notwithstanding the institution by or against the Company of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the disaffirmance of the Note in any such proceedings, or others.

    8. Termination. This Guaranty shall remain in full force and effect as to the Guarantor until all of the Companys' Obligations under the Note outstanding shall be finally and irrevocably paid in full. Payment of all of the Company's Obligations from time to time shall not operate as a discontinuance of this Guaranty. If after receipt of any payment of all or any part of the Company's Obligations, the Funds are for any reason compelled to surrender such payment to any person or entity, because such payment is determined to be void or voidable as a preference, impermissible set off, or a diversion of trust fund, or for any reason, this Guaranty shall continue in full force notwithstanding any contract action which may have been taken by the Funds in reliance upon such payment, and any such contrary action so taken shall be without prejudice to the Funds' rights under this Guaranty and shall be deemed to have been conditioned upon such payment having become final and irrevocable.

    9. The Company's Financial Condition. The Guarantor assumes full responsibility for keeping fully informed of the Company's financial condition and all other circumstances affecting the Company's ability to perform its Obligations, and agree that the Funds will have no duty to report to Guarantor any information which the Funds receive about the Company's financial condition or any circumstances bearing on its ability to perform.

    10. Expenses. The undersigned agrees to pay and reimburse the Funds for all cost and attorney's fees, which they may expend or incur in the enforcement of this Guaranty or any of the Company's Obligations under the Note.

    11. Delay, Cumulative Remedies. No delay or failure by the Funds to exercise any right to remedy against the Company or Guarantor will be construed as a waiver of that right or remedy. All remedies of the Funds against the Company and the Guarantor are cumulative.

    12. Binding Effect. This guaranty shall incur to the benefit of and may be enforced by the Funds, and shall be binding upon and enforceable against the Guarantor and Guarantor's heirs, legal representatives, successors and assigns. In the event of the death of the Guarantor, the obligations of such deceased Guarantor shall continue in full force and effect against his estate, personal representatives, successors and assigns. Without limiting the generality of the foregoing, the Funds (or their successors and assigns) may from time to time and without notice to undersigned, assign any and all of their rights under this Guaranty without in any way affecting or diminishing the obligations of the undersigned hereunder, who shall continue to remain bound by the obligated to perform under and with respect to this Guaranty as though there had been no such assignment.

    13. Default. The Guarantor hereby authorizes irrevocably any attorney of any court of record to appear for him/her in such court, at any time after ten (10) days notice after default in any payment due under this Guaranty, and confess judgement against Guarantor, after service of notice of the claimed default, in favor of the Funds for such

amount to be unpaid and owed thereon, including interest, liquidated damages and reasonable cost of collection including reasonable attorneys' fees. The Guarantor agrees to waive and release all errors which may intervene in any such proceedings, and consent to immediate execution upon such judgement, hereby ratify and confirming all that said attorney may do by virtue hereof.

    14. <u>Warranties.</u> Guarantor makes to the Funds the following representations and warranties:

        (a) <u>Authorization.</u> Guarantor has full right, power and authorization to enter into this Guaranty and carry out his obligations hereunder

        (b) <u>No Conflict.</u> The execution, delivery and performance by Guarantor of this Guaranty will not violate or be in conflict with, results in a breach of, or constitute a default under, any indenture, agreement or any other instrument to which Guarantor is a party or by which Guarantor or any of his assets or properties is bound, or any order, writ, injunction or decree of any court or governmental institute.

        (c) <u>Litigation.</u> There are no actions, suits or proceedings pending, or to the knowledge of Guarantor, threatened against or adversely affecting any Guarantor at law of in equity or before or by governmental agency or instrumentality that involve any of the transactions herein contemplated, or the possibility of any judgment or liability that may result in any material and adverse change in the financial condition of any Guarantor. Guarantor is not in default with respect to any judgment, order, writ, injunction, decree, rule or regulation of any court.

        (d) <u>Enforceability.</u> This guaranty is a legal, valid and binding obligation of Guarantor, enforceable in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally.

    15. <u>Notices.</u> All notices or other communications required or permitted hereunder shall be (a) in writing and shall be deemed to be given when either (I) delivered in person, (II) three (3) days after deposit in a regularly maintained receptacle of the United States mail as registered or Certified mail, postage prepaid, (III) when received if sent by private courier service, or (IV) on the day on which Guarantor refuses delivery by mail or by private courier service, and (b) addressed as follows:

| In Case of Guarantor | In Case of the Funds: |
|---|---|
| Kevin Danteler<br>400 W. 76th St. #330<br>Chicago, IL 60620 | Jerrod Olszewski<br>Laborers Pension & Welfare Fund<br>Sub Office<br>111 W Jackson Blvd<br>Suite 1415<br>Chicago IL 60604-3868 |

or such other addresses as may from time to time be designated by the party to be addressed by notice to the other in the manner hereinabove provided. The Funds will use their best efforts to send courtesy copies of notices provided hereunder to Guarantor's attorney, _William E. Jamison, Jr._. But the failure by the Funds to send courtesy copies to Guarantor's attorney shall not limit or restrict the Funds' rights under this Guaranty in any manner nor relieve Guarantor of any obligations under this guaranty.

    16. <u>Additional Waivers.</u> Guarantor expressly and unconditionally waives, in connection with any suit, action or proceeding brought by the Funds on this Guaranty, any and every right he or she may have to (I) injunctive relief, (II) a trial by jury, (III) interpose any counterclaim therein and (IV) seek to have the same consolidated with any other or separate suit, action or proceeding.

17. Severability. If all or any portion of any provision of this Guaranty is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Guaranty and the remaining provisions and portions hereof shall continue in full force and effect.

18. Applicable Law; Venue. This Guaranty and the transactions evidenced hereby shall be construed and interpreted under the laws of the State of Illinois. Guarantor, in order to induce the Funds to accept this Guaranty and inter into the loan agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, agrees that all actions or proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from this Guaranty shall be litigated, at the Fund's sole discretion and election, only in courts having a situs within the county of Cook, State of Illinois, Eastern Division. Guarantor hereby waives any right he or she may have to transfer or change the venue of any litigation brought against him by the Funds on this agreement in accordance with this paragraph.

19. Time is of the Essence. Time is of the essence of this Guaranty as to the performance of the undersigned.

20. Death of a Guarantor. In the event of the death of Guarantor, the Funds shall have the right to accelerate the indebtedness evidenced by the Note unless, within sixty (60) days of his death, Guarantor's estate assumes his obligations hereunder by an instrument satisfactory to the Funds and delivers to the Funds security for performance of such obligations satisfactory to the Funds.

IN WITNESS WHEREOF, the undersigned Guarantor has executed this instrument as of the date and year first above written.

_/s/ Lonnie Vantz_

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
Social Security Number

Date: 7/13/12

APPROVED AS TO FORM AND SUBSTANCE
ON BEHALF OF GUARANTOR;

_____

Dated: _____

4

## COMMERCIAL SECURITY AGREEMENT

DEBTORS:    Lonnie Dantzler
            400 W. 76th St., Suite 330
            Chicago, IL 60620

            Dee and Bee Construction, Inc.
            400 W. 76th St., Suite 330
            Chicago, IL 60620

CREDITOR:   James S. Jorgensen, Administrator
            Laborers' Pension and Welfare Funds
            11465 W. Cermak Road
            Westchester, IL 60154

THIS COMMERCIAL SECURITY AGREEMENT is entered into between Lonnie Dantzler, individually and d/b/a D and B Construction, and Dee and Bee Construction, Inc. (collectively referred to below as "Grantor"); and James S. Jorgensen, Administrator of the Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, and agent of the General Laborers' District Council of Chicago and Vicinity Training Fund (collectively referred to below as "Creditor"). For valuable consideration, Grantor grants to Creditor a security interest in the amount of $90,740.85 in the Collateral to secure the indebtedness and agrees that Creditor shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Creditor may have by law.

DEFINITIONS. The following words shall have the following meanings when used in this Agreement. Terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. All references to dollar amounts shall mean amounts in lawful money of the United States of America.

   Agreement. The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

   Collateral. The word "Collateral" means the following described property of Grantor, whether now owned or hereafter acquired, whether now exiting or hereafter arising, and wherever located:

   (a)   All attachments, accessions, accessories, tools, parts, supplies, increases, and additions to and all replacements of and substitutions for any property described above.

   (b)   All products and produce of any of the property described in this Collateral section.

   (c)   All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, or other disposition of any of the property described in this Collateral section.

   (d)   All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section.

   (e)   All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

   (f)   All inventory, material, equipment, and accounts receivable.

Creditor. The word "Creditor" means James S. Jorgensen, Administrator of the Laborers' Pension Fund and Laborers' Welfare Fund for the Health and Welfare Department of the Construction and General Laborers' District


EXHIBIT C

Council of Chicago and Vicinity, and agent of the General Laborers' District Council of Chicago and Vicinity Training Fund, his successors and assigns.

Event of Default. The words "Event of Default" mean and include without limitation any of the Events of Default set forth below in the section titled "Events of Default."

Grantor. The word "Grantor" means Lonnie Dantzler, individually and d/b/a D and B Construction, and Dee and Bee Construction, Inc., their successors and assigns.

Guarantor. The word "Guarantor" means and includes without limitation each and all of the guarantors, sureties, and accommodation parties in connection with the indebtedness.

Indebtedness. The word "Indebtedness" means the indebtedness evidenced by the Installment Note, including all principal and interest, together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. In additional the word "Indebtedness" includes all other obligations, debts and liabilities, plus interest thereon, of Grantor, or any one or more of them, to Creditor, as well as all claims by Creditor against Grantor, or any one or more of them, whether existing now or later; whether they are voluntary or involuntary, due or not due, direct or indirect, absolute or contingent, liquidated or unliquidated; whether Grantor may be liable individually or jointly with others; whether Grantor may be obligated as guarantor, surety, accommodation party or otherwise; whether recovery upon such indebtedness may be or hereafter may become barred by any statute of limitations; and whether such indebtedness may be hereafter may become other unenforceable.

Note. The word "Installment Note" means the Installment Note and Guaranty of Payment and Indemnification Agreement entered into by Lonnie Dantzler individually and d/b/a D and B Construction, and Dee and Bee Construction, Inc. with the Creditor on or about ~~June 13~~, July 13, 2012.

Related Documents. The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

OBLIGATIONS OF GRANTOR. Grantor warrants and covenants to Creditor as follows:

**Perfection of Security Interest.** Grantor agrees to execute such financing statements and to take whatever other actions are requested by Creditor to perfect and continued Creditor's security interest in the Collateral. Upon request of the Creditor, Grantor will deliver to Creditor any and all of the documents evidencing or constituting the Collateral, and Grantor will note Creditor's interest upon any and all chattel paper if not delivered to Creditor for possession by Creditor. Grantor hereby appoints Creditor as its irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect or to continue the security interest granted in this Agreement. Creditor may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Creditor for all expenses for the perfection and the continuation of the perfection of Creditor's security interest in the collateral. Grantor promptly will notify Creditor before any change in Grantor's name including any change to the assumed business names of Grantor. **This is a continuing Security Agreement and will continue in effect even though all or any part of the indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Creditor.**

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, the Collateral is enforceable in accordance with its terms, is genuine, and complies with

2

applicable laws concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority, and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Creditor, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held submit to delivery instruction or theretofore shipped or delivered pursuant to a contract of sale, or for services theretofore performed by Grantor with or for the account debtor; there shall be no setoffs or counterclaims against any such account, and no agreement under which any deductions or discounts may be claimed shall have been made with the account debtor except those disclosed to Creditor in writing.

**Location of the Collateral.** Grantor, upon request of Creditor, will deliver to Creditor, in form satisfactory to Creditor a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (a) all real property owned or being purchased by Grantor; (b) all real property being rented or leased by Grantor; (c) all storage facilities owned, rented, leased, or being used by Grantor; and (d) all other properties where Collateral is or may be located. Except in the ordinary course of its business, Grantor shall not remove the Collateral from its existing locations without the prior written consent of the Lender.

**Removal of Collateral.** Grantor shall keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts, the records concerning the Collateral) at Grantor's address shown above, or at such other locations as are acceptable to Creditor. Except in the ordinary course of its business, including the sales of inventory, Grantor shall not remove the Collateral from its existing locations without the prior written consent of Creditor. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicle outside the State of Illinois, without the prior written consent of Creditor.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, Grantor shall not sell, or otherwise transfer or dispose of the Collateral. while Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber of otherwise permit the Collateral to be submit to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this agreement, without the prior written consent of Creditor. This includes security interest even if junior in right to the security interest granted under this Agreement. Unless waived by Creditor, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Creditor and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Creditor to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Creditor.

**Title.** Grantor represents and warrants to Creditor that it holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Creditor has specifically consented. Grantor shall defend Creditor's rights in the Collateral against the claims and demands of all other persons.

**Collateral Schedules and Locations.** As often as Creditor shall require, and insofar as the Collateral consists of accounts, Grantor shall deliver to Creditor schedules of such Collateral, including such information as Creditor may require, including without limitation names and addresses of such account debtors and agings of accounts. Insofar as the Collateral consists of inventory and equipment, Grantor shall deliver to Creditor, as often as Creditor shall require, such lists descriptions, and designations of such Collateral as Creditor may require to identify the nature, extent, and location of such Collateral. Such information shall be submitted for Grantor and each of its subsidiaries or related companies.

3

**Maintenance and Inspection of Collateral.** Grantor shall maintain all tangible Collateral in good condition and repair. Grantor will not commit or permit damage to or destruction of the Collateral or any part of the Collateral. Creditor and its designated representatives and agents shall have the right at all reasonable times to examine, inspect, and audit the Collateral wherever located. Grantor shall immediately notify Creditor, of all cases involving the return, rejection, repossession, loss or damage of or to any Collateral; of any request for credit or adjustment or of any other dispute arising with respect to the Collateral; and generally of all happenings and events affecting the Collateral or the value or the amount of the Collateral.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the indebtedness, or upon any of the other Related documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligations to pay and so long as Lender's interest in the Collateral is not jeopardized in Creditor's sole opinion. If the Collateral is subject to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Creditor cash, a sufficient corporate surety bond or other security satisfactory to Creditor in any amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Creditor and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Creditor as an additional obligee under any surety bond furnished in the contest proceedings.

**Compliance with Governmental Regulations.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable tot he ownership, production, disposition, or use of the Collateral. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceedings, including appropriate appeals, so long as Creditor's interest in the Collateral, in Creditor's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any hazardous waste or substance, as those terms are defined in the Comprehensive Environmental Response, Compensation, and Liability At of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No., 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or Federal laws, rules, or regulations adopted pursuant to any of the foregoing. The terms "hazardous waste" and "hazardous" substance" shall also include, without limitation, petroleum and petroleum by-products or any fractions thereof and asbestos. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for hazardous wastes and substances. Grantor hereby (a) releases and waives any future claims against Creditor for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify shall survive the payment of indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Creditor and issued by a company or companies reasonably acceptable to Creditor. Grantor, upon request of Creditor, will deliver to Creditor from time to time the policies or certificates of insurance in form satisfactory to Creditor, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Creditor and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Creditor will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Creditor holds or is offered a security interest, Grantor will provided Creditor with such loss payable or other endorsements as

4

Creditor may require. If Grantor at any time fails to obtain or maintain any insurance as required under the Agreement, Creditor may (but shall not be obligated to) obtain such insurance as Creditor deems appropriate, including if it so chooses "single interest insurance," which will cover only Creditor's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Creditor of any loss or damage to the Collateral. Creditor may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall beheld by Creditor as part of the Collateral. If Creditor consents to repair or replacement of the damage or destroyed Collateral, Creditor shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Creditor does not consent to repair or replacement of the Collateral, Creditor shall return a sufficient amount of the proceeds to pay all of the indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the indebtedness.

**Insurance Reserves.** Creditor may require Grantor to maintain with Creditor reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Creditor to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Creditor. The reserve funds shall be held by Creditor as a general deposit and shall constitute a non-interest-bearing-account which Creditor may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Creditor does not hold the reserve funds in trust for Grantor, and Creditor is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Creditor, shall furnish to Creditor reports on each existing policy of insurance showing such information as Creditor may reasonably request including the following: (a) the name of the insurer; (b) the risks insured; (c) the amount of the policy; (d) the property insured; (e) the then current value on the basis of which insurance has been obtained and manner of determining that value; and (f) the expiration date of the policy. In addition, Grantor shall upon request by Creditor have an independent appraiser satisfactory to Creditor determine, as applicable, the cash value or replacement cost of the Collateral.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default on the Installment Note and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Creditor is required by law to perfect Creditor's security interest in such Collateral. Until otherwise notified by Creditor, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event of Default exists, Creditor may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Creditor for application to the Indebtedness. If Creditor at any time has possession of any Collateral, whether before or after an Event of Default, Creditor shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Creditor takes such action for that purposes as Grantor shall request or as Creditor, in Creditor's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Creditor shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, not to protect, preserve or maintain any security interest given to secure the indebtedness.

**EXPENDITURES BY CREDITOR.** If not discharged or paid when due, Creditor may (but shall not obligated to) discharge or pay any amounts required to be discharged or paid by Grantor under this Agreement, including without limitation all taxes, liens, security interest, encumbrances, and other claims, at any time levied or placed on the Collateral. Creditor also may (but shall not be obligated to) pay all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Creditor for such purposes will then bear interest at the rate

charged under the Installment Note from the date incurred or paid by Creditor to the date of repayment by Grantor. All such expenses shall become a part of the indebtedness and, at Creditor's option, will (a) be payable on demand, (b) be added to the balance of the Installment Note and be apportioned amount and be payable with any installment payments to become due during either (i) the term of any applicable insurance policy or (ii) the remaining term of the Installment Note, or (c) treated as a balloon payment which will be due and payable at the Installment Note's maturity. This Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Creditor may be entitled upon the occurrence of an Event of Default.

**REINSTATEMENT OF SECURITY INTEREST.** If payment is made by Grantor, whether voluntarily or otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Creditor is forced to remit the amount of that payment (a) to Grantor's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (b) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Creditor or any of creditor's property, or (c) by reason of any settlement or compromise of any claim made by Creditor with any claims (including without limitation Grantor), the Indebtedness shall be considered unpaid for the purposes of enforcement of this Agreement and this Agreement shall continue to be effective of shall be reinstated, as the case may be, notwithstanding any cancellation of this Agreement or, of any note or other instrument or agreement evidencing the Indebtedness and the Collateral will continue to secure the amount repaid or recovered to same extent as if that amount never had been originally received by Creditor, and Grantor shall be bound by any judgment, decree, order settlement or compromise relating to the Indebtedness or to this Agreement.

**EVENTS OF DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Default in Indebtedness.** Failure to Grantor to make any payment when due on the Installment Note.

**Other Defaults.** Failure of Grantor to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents in any other agreement between Creditor and Grantor.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrowers' or any Grantor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Creditor by or on behalf of Grantor under this Agreement, the Note or the Related documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral documents to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Grantor's existence as a going business, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor by any governmental agency against the Collateral or any other collateral securing the indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Creditor. however, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or

6

forfeiture proceedings, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or such Guarantor dies or becomes incompetent. Creditor, at its option, may but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Creditor and, in doing so, cure the Event of Default.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Creditor believes the prospect of payment or performance of the indebtedness is impaired.

**Insecurity.** Lender, in good faith, deems itself insecure.

**Right to Cure.** If any default, other than a Default in Indebtedness, is curable and if Grantor has not been given a prior notice of a breach of the same provision of this Agreement, it may be cured (and no Event of Default will have occurred,), if Grantor, after Creditor sends written notice demanding cure of such default, (a) cures the default within five (5) days, or (b) if the cure requires more than five (5) days, immediately initiates steps which Creditor's deems in Creditor's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event or Default occurs under this Agreement, at any time thereafter, Creditor shall have all the rights of a secured party under the Illinois Uniform Commercial Code. In addition and without limitation, Creditor may exercise any one or more of the following rights and remedies.

**Accelerate Indebtedness.** Creditor may declare the entire indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice.

**Assemble Collateral.** Creditor may require Grantor to deliver to Creditor all or any portion of the Collateral and any and all certificates of title and other documents related to the Collateral. Creditor may require Grantor to assemble the Collateral and make it available to Creditor at a place to be designated by Creditor. Creditor also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agreed Creditor may take such other goods, provided the Creditor makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Creditor shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in its own name or that of grantor. Creditor may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily cold on a recognized market, Creditor will give Grantor reasonable notice of the time after which any private sale or any other intended disposition of the Collateral is to be made. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** To the extent permitted by applicable law, Creditor shall have the following rights and remedies regarding the appointment of a receiver; (a) Creditor may have a receiver appointed as a matter of right, (b) the receiver may be an employee of Creditor and may serve without bond, and (c) all fees of the receiver or his or her attorney shall become part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from the date of expenditure until repaid.

**Collect Revenues, Apply Accounts.** Creditor, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Creditor may at any time in its discretion transfer any Collateral into it own name or that of its nominee and receive the payments, rents, income, and

7

revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Creditor may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Creditor may demand, collect, receipt for, settle, compromise, adjust, sue for foreclose, or realize on the Collateral as Creditor may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Creditor may, on behalf of an in the name of Grantor, receive, open and dispose of mail addressed to Grantor, change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Creditor may notify accounts debtor and obligors on any Collateral to make payments directly to Creditor.

**Obtain Deficiency.** If Creditor chooses to sell any or all of the Collateral, Creditor may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Creditor after application or all amounts received from the exercise of the rights provided in this Agreement, Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Creditor shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Creditor shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Cumulative Remedies.** All of Creditor's rights and remedies, whether evidenced by this Agreement or the Related Documents or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Creditor to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligations of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Creditor right to declare a default and to exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provides are a part of this Agreement.

**Amendments.** This Agreement, together with the Note, Guaranty of Payment and Indemnification and any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Applicable Law.** This Agreement has been delivered to Creditor and accepted by Creditor in the State of Illinois. If there is a lawsuit, Grantor agrees upon Creditor's request to submit to the jurisdiction of the courts of the State of Illinois. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

**Attorneys' Fees, Expenses.** Grantor agrees to pay on demand all of the Creditor's costs and expenses, including attorneys' fees and Creditor's legal expenses, incurred in connection with the enforcement of this Agreement. Creditor may pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses included Creditor's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not be used to interpret or define the provisions of this Agreement.

**Multiple Parties; Corporate Authority.** All obligations of Grantor under this Agreement shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each of the persons signing below is responsible for all obligations in this Agreement.

8

**Notices.** All notices required to be given under this Agreement shall be given in writing, may be sent by telefacsimile (unless otherwise required by law), and shall be effective when actually delivered or when deposited with a nationally recognized overnight courier or deposited in the United States mail, first class, postage prepaid, addressed to the party to whom the notice is to given at the address show above. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. To the extent permitted by applicable law, if there is more than one Grantor, notice to any Grantor will constitute notice to all Grantors. For notice purposes, Grantor will keep Creditor informed at all times of Grantor's current address(es).

**Power of Attorney.** Grantor hereby appoints Creditor as its true and lawful attorney-in-fact, irrevocably, with full power of substitution to do the following: (a) to demand, collect, receive, receipt for, sue and recover all sum of money or other property which may now or hereafter become due, owing or payable from the Collateral; (b) to execute, sign and endorse any and all claims, instruments, receipts, checks, drafts or warrants issued in payment for the Collateral; (c) to settle or compromise any and all claims arising under the Collateral; and, if the place and stead of Grantor, to execute and deliver its release and settlement for the claim; and (d) to file any claim or claims or to take any action or institute or take part in any proceedings, either in its own name or in the name of Grantor, or otherwise, which in the discretion of Creditor may seem to be necessary or advisable. This power is given as security for indebtedness, and the authority hereby conferred is and shall be irrevocable and shall remain in full force and effect until renounced by Creditor.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be invalid or unenforceable as to any person or circumstances, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

**Successor Interests.** Subject to the limitations set forth above on transfer of the Collateral, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waiver.** Creditor shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Creditor. No delay or omission on the part of Creditor in exercising any right shall operate as a waiver of such right or any other right. A waiver by Creditor of a provision of this Agreement shall not prejudice or constitute a waiver of Creditor's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Creditor, nor any course of dealing between Creditor and Grantor, shall constitute a waiver of any of Creditor's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Creditor is required under the Agreement, the granting of such consent by Creditor in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all case such consent may be granted or withheld in the sole discretion of Creditor.

# THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT, AND GRANTOR AGREES TO ITS TERMS. THIS AGREEMENT IS DATED June 13, 2012.
~~June~~ July

GRANTOR:
Lonnie Dantzler, individually and d/b/a D and B Construction

By: _____
    Lonnie Dantzler

GRANTOR:
Dee and Bee Construction

By: _____
    Lonnie Dantzler, Owner

CREDITOR:
James S. Jorgensen, Administrator of the Laborers' Pension Fund and Laborers' Welfare Fund for the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, and agent of the General Laborers' District Council of Chicago and Vicinity Training Fund.

By: _____
    James S. Jorgensen, Administrator

10